SEYMOUR PETROVSKY and BERNICE PETROVSKY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Petrovsky v. Commissioner
Docket No. 6767-75.
United States Tax Court
T.C. Memo 1976-296; 1976 Tax Ct. Memo LEXIS 108; 35 T.C.M. (CCH) 1323; T.C.M. (RIA) 760296; September 21, 1976, Filed Seymour Petrovsky, pro se. Richard A. Jones, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $5,000 in petitioners' Federal income tax for 1972. The only issue presented for decision is whether petitioners have shown that they are entitled to a deduction under section 170(a)[1]/ for a charitable contribution of a series *109 of 35-mm film slides to the Louisiana State University Foundation. FINDINGS OF FACT Petitioners Seymour Petrovsky and Bernice Petrovsky, husband and wife, were legal residents of Phoenix, Arizona, at the time they filed their petition. They filed a joint Federal income tax return for 1972 with the Western Region Service Center, Ogden, Utah. Petitioners moved to Arizona in 1962 and have lived there since that time. Petitioner Seymour Petrovsky's (hereinafter referred to as petitioner) primary business activity while residing in Arizona has been the design and administration of pension and profit-sharing plans and the related sale of life insurance and mutual funds. Petitioner also lectures and participates in seminars on a fee and nonfee basis. Since 1962 petitioner's gross income has been derived from the following sources: Nature of Activity
Percentage
Insurance commissions--new sales
40--46
Insurance commissions--renewals
31--34
Commissions--mutual funds
8--13
Administration and lecture fees--
pension and profit-sharing plans
12--16
*110 Prior to his move to Arizona in 1962, petitioner was a successful life insurance salesman for Businessmen's Assurance Co. of Kansas City, Missouri. After arriving in Arizona, petitioner decided that there was a potential market for the sale of life insurance in connection with the establishment of funded pension plans. Therefore, he set about to inform and establish himself as a pension consultant. Petitioner obtains most of his clients from referrals by lawyers, accountants, and insurance salesmen and through his participation as a pension plan consultant in seminars before various groups--engineers, architects, physicians, life insurance salesmen, and other professional and academic organizations. In 1962 petitioner sponsored a city-wide seminar on Arizona's Professional Corporation Act and pension plans. He engaged a local certified public accountant, an attorney, and a trust officer to lecture at this seminar. Petitioner taped the seminar presentations describing the roles of a certified public accountant, an attorney, and a trust officer in the preparation, establishment, and management of a pension plan for small professional businesses. Petitioner used these presentations *111 as background for developing a visual and oral presentation to assist him in interesting prospective clients in forming corporations, establishing pension plans, and using his administrative services in the investment of funds contributed to the deferred compensation plans, i.e., funding the plans with life insurance and mutual funds. This visual and oral presentation, according to petitioner, was an adaptation of his first seminar held in Phoenix. The presentation was an attempt to explain visually the meaning of certain words and concepts used in the income tax and State laws with a view toward motivating potential clients to adopt insurance-funded pension plans. The original visual presentation consisted of large black and white cards. Petitioner found, however, that these cards were cumbersome to carry on a plane and were not effective in making presentations before large audiences. Accordingly, petitioner hired a local artist to duplicate these cards in color, and he then had these color renderings photographed and obtained two prints of each photograph, thus acquiring two "original" sets of film slides of this artwork. Only 2 of the 28 visual concepts reflected in the slides *112 were conceived and developed by petitioner, the other 26 visual concepts reflecting to some extent the ideas of others. The form of the visual concepts ultimately reflected on the 28 color cards and the 28 slides was prepared by an artist hired by petitioner. Petitioner provided the artist with a sketch and asked the artist to reproduce his sketch, but to "dress it up" to make it more effective as a word picture. The artist then submitted to petitioner a pencil sketch or rendering of how he proposed to show the same diagram or sketch. Petitioner reviewed the artist's ideas and either approved them or made additional changes. Petitioner's out-of-pocket costs of the visual presentation, including the black and white cards, the color cards, and the two sets of 28 slides, were within the range of $700 and $1,000. These costs were deducted as current operating expenses on the income tax returns filed by petitioners for the years in which such expenses were paid. Petitioner continued to use the black and white and color cards before individual clients or small groups; the slide sets were used primarily in speaking engagements before large groups. In 1972 petitioner transferred *113 one of the two "original" sets of the 28 film slides to the Louisiana State University Foundation (hereinafter the foundation). Petitioner also suggested that the foundation tape the seminar presentation which he was scheduled to make at the Institute of Insurance Marketing, Louisiana State University, in early 1973, and use the tape as an explanation of the slides. Petitioner retained the other original set of the 28 film slides and the original of the black and white and color renderings of the visual presentation. He has continued to use the slides and cards in the same manner as he did before he made the transfer to the foundation. Petitioner has also retained the right to transfer to any successor in interest of any of his business activities these same retained rights with respect to the slides and explanatory materials. Any such successor in interest to petitioner's business activities will likewise have the right to transfer these retained rights to any future owner of such business activity or activities. On his 1972 joint Federal income tax return, petitioner deducted $10,000 as a charitable contribution for the original set of film slides transferred to the foundation. *114 Both before and after the transfer of one original set of the 28 slides of his visual presentation to the foundation, petitioner allowed anyone attending his seminars to tape his oral presentation and to sketch his slides and, according to petitioner, his presentation has been taped hundreds of times in different parts of the country. In some instances, the sponsors of the seminars have precluded others from taping the presentation but have taped and sold copies of the seminar proceedings. The foundation, however, has never attempted to sell copies of petitioner's slides on a national marketing basis. Petitioner's visual presentation and accompanying materials were never legally protected from use by others through copyrights or otherwise and could have been copied and used by others in any manner and to any extent they so desired. The 28 slides would be easy to duplicate. In fact, several of the slides are photocopies of Internal Revenue Service tax forms. By statutory notice of deficiency, respondent disallowed petitioner's claimed charitable contribution deduction as follows: It is determined that the deduction of $10,000.00 you claimed as a charitable contribution *115 to the L.S.U. Foundation is not allowable because it has not been established that the gift represents any amount which is a charitable contribution deduction within the meaning of section 170 of the Internal Revenue Code. Accordingly, your taxable income is increased $10,000.00. OPINION Petitioner contends that the vague statement in the notice of deficiency, quoted above, was insufficient to place in issue the value of his contribution to the foundation for which he claims a deduction under section 170(a). We certainly agree the statement is vague and ambiguous.But other documents in the case show that, when the case was being prepared for trial, both parties had interpreted the statement as placing the value of petitioner's contribution to the foundation in issue. Thus, the stipulation of facts, signed by petitioner on May 14, 1976, 10 days prior to the trial on May 24, 1976, contains the following: Respondent does not hereby stipulate to the petitioner's asserted valuation in this "AGREEMENT" of $10,000.00. Further, both the petitioners and the respondent agree that the acceptance reflected on this document by Daniel E. Bivins, Secretary of Foundation, *116 only indicates acceptance of the slides and supporting materials and was not intended to indicate agreement or disagreement with petitioner's $10,000.00 asserted value. Respondent's trial memorandum, filed prior to the trial, lists as an issue the value of the film slides contributed to the foundation. And petitioner testified that, in his opinion, the slides had a value of $10,000. Petitioner based this opinion on his belief that the foundation could have sold 100 sets of the slides at $100 for each set. We think it apparent that the value of the slides contributed to the foundation was in issue in this case from the outset. Whether or not the burden of proof rests with petitioner or respondent as to the value of the slides contributed to the foundation, we think the evidence shows that petitioner contributed no property of any substantial value to the foundation. Accordingly, we sustain respondent's determination. Petitioner had the 28 slides prepared, deducting their costs as a business expense, for use in connection with his pension plan/life insurance sales program. It is true that, in 1972, he gave one set of the slides to the foundation and the foundation taped *117 his accompanying oral presentation at a seminar which it sponsored. But petitioner retained another set of the slides and has continued to use them in exactly the same way as he had used them prior to the gift, revising his set from time to time to reflect changes in the filmed Internal Revenue Service forms and amendments to the tax laws. The film slides contributed to the foundation were not protected by copyright or any other similar sanction. The thoughts and ideas conveyed by the slides were not exclusively those of petitioner. He has made no effort, either before or after his gift to the foundation, to prevent participants in his seminars from sketching the slides or taping his oral explanation of them. Indeed, he admitted that his presentation has been taped hundreds of times and sponsors of some of his seminars have taped and sold copies of his entire presentation. Petitioner was free to turn the slides over to any successor in interest in his business. Petitioner parted with nothing except the material on which the photographs were printed. We are unable to conclude that, under the provisions of section 170(a), petitioner made a deductible charitable contribution *118 to the foundation of property which had any real value. Cf. Miller v. Commissioner,299 F.2d 706, 710-711 (2d Cir. 1962), affg. 35 T.C. 631 (1961), cert. denied 370 U.S. 923 (1962); Wall Products, Inc.,11 T.C. 51, 57 (1948). We have carefully considered petitioner's testimony that, in his opinion, the contributed slides had a fair market value of $10,000. We are not convinced. There is no evidence that the foundation ever attempted to market the slides or, in fact, there was any market in which they could have been sold. Since the only thing of value contributed to the foundation was the material on which the photographs were printed, we cnnclude that the slides had a value so nominal as to be negligible. [2]/ *119 To reflect the disposition of settled issues, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.
2. / Respondent argues that, under sec. 170(e)(1), the amount deductible by petitioner pursuant to sec. 170(a)↩ should be reduced to zero because, if the slides had been sold by petitioner, they would have produced ordinary income. Respondent contends the slides were not capital assets and, since petitioner had deducted the cost of the slides in prior years, his basis was zero and any sales proceeds would have been ordinary gain. Since we have concluded that the slides donated by petitioner had no measurable value, we do not reach this issue.